IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE GRAND JURY PROCEEDINGS ) | Misc. No. ~~98~~- 98-95 |
| | (Under Seal) |

FILED
MAR - 6 1998
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**MOTION TO COMPEL BRUCE R. LINDSEY TO TESTIFY**

The United States of America, by Kenneth W. Starr, Independent Counsel, respectfully moves this Court to compel Bruce R. Lindsey to testify before the grand jury regarding the matters for which he has previously asserted Executive privilege, attorney-client privilege, and work product protection. In support of this motion, the United States submits the reasons and authorities contained in its Brief in Support of Motion to Compel Bruce R. Lindsey to Testify.

Respectfully submitted,

Kenneth W. Starr
Independent Counsel

By: [signature]
ROBERT J. BITTMAN
Deputy Independent Counsel

Stephen Bates
Joseph M. Ditkoff
Rodger A. Heaton
Darrell M. Joseph
Associate Independent Counsel

OFFICE OF THE INDEPENDENT COUNSEL
1001 Pennsylvania Avenue, N.W.
Suite 490-North
Washington, D.C. 20004
(202) 514-8688

FILED

MAR - 6 1998

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA**

**IN RE GRAND JURY PROCEEDINGS** ) **Misc. No. 98-** 95

**(Under Seal)**

**BRIEF IN SUPPORT OF MOTION TO COMPEL BRUCE R. LINDSEY TO TESTIFY**

The United States, by Kenneth W. Starr, Independent Counsel, respectfully submits this Brief in Support of the Motion to Compel Bruce R. Lindsey to testify before the grand jury. The grand jury here is investigating "to the maximum extent authorized by the Independent Counsel Reauthorization Act of 1994 whether Monica Lewinsky or others suborned perjury, obstructed justice, intimidated witnesses or otherwise violated federal law other than a Class B or Class C misdemeanor or infraction in dealing with witnesses, potential witnesses, attorneys, or others concerning the civil case Jones v. Clinton." In furtherance of that mandate, Mr. Lindsey was asked to relay the substance of his conversations with many other people relating to Monica Lewinsky at a time when Ms. Lewinsky was no longer employed by the United States. Mr. Lindsey stated that he was not willing to answer any questions concerning conversations about Monica Lewinsky that occurred among White House staff.[1] He also refused to answer questions seeking information about conversations with

[1] Grand Jury Tr., Feb. 19, 1998, p.59, lines 1-6.

individuals who are not White House employees,[2] and questions seeking information about conversations held in the presence of individuals who are not White House employees.[3]

In refusing to disclose the substance of conversations concerning Monica Lewinsky, Mr. Lindsey invoked Executive privilege, attorney-client privilege, and work product protection. As a matter of law, none of the asserted privileges applies. Executive privilege is flatly inapplicable to communications about the President's private conduct; and attorney-client privilege and work product protection are unavailable to government attorneys called before a federal grand jury. Accordingly, we respectfully submit that the Court should compel Mr. Lindsey to testify.[4]

---

[2] See, e.g., Grand Jury Tr., Feb. 18, 1998, p.106, line 18 through p.108, line 20 (Vernon Jordan), p.120, lines 6-20 (President's personal attorneys) and Grand Jury Tr., Feb. 19, 1998, p.26, lines 18-23 (Vernon Jordan), p.51, lines 3-24 (attorney for a grand jury witness), p.52, line 21 through p.53, line 10 (attorney for John Podesta).

[3] See, e.g., Grand Jury Tr., Feb. 19, 1998, p.70, lines 2-25, p.79, lines 16-22, p.80, line 17 through p.81, line 3 (daily conversations held in presence of President's personal attorneys).

[4] The present filing is necessarily broad and general because neither Mr. Lindsey nor the White House has yet offered any rationale for invocation of the privileges here. The burden, of course, rests on the party asserting a testimonial privilege. Bartholdi Cable Co. v. FCC, 114 F.3d 274, 280 (D.C. Cir. 1997).

## I. MR. LINDSEY's ASSERTION OF EXECUTIVE PRIVILEGE SHOULD BE REJECTED.

On February 18th and 19th, Bruce Lindsey, Assistant to the President and Deputy Counsel, asserted Executive privilege (both in the form of a Presidential communications privilege and a deliberative process privilege) in refusing to answer many questions before the grand jury that sought the substance of conversations regarding the President's purely private conduct--conduct having no relation to his Article II duties. Mr. Lindsey asserted these forms of Executive privilege in refusing to reveal the substance of conversations involving Monica Lewinsky. Mr. Lindsey asserted the privilege concerning conversations not only with the President[5] and other senior White House employees, but also with persons not employed by the government, including the President's friends and personal attorneys, grand jury witnesses, and attorneys for grand jury witnesses,[6] many of whom have no responsibility for advising the President on any matters, much less on official matters.

Several independent reasons dictate that this Court should not allow White House witnesses, including Mr. Lindsey, to deprive the grand jury of relevant testimony based on an assertion of Executive privilege. First and foremost, the

---

[5] Grand Jury Tr., Feb. 19, 1998, p.41, line 22 through p.43, line 5.

[6] See supra notes 2-3.

privilege, by definition, does not apply to this subject matter. The testimony sought would not reveal the kinds of communications that are protected by the privilege--for example, national security or diplomatic secrets--nor would it reveal confidential deliberative communications about official governmental matters. This Court should not allow a witness to assert a governmental privilege to deny the grand jury testimony about private conduct. Second, even assuming Executive privilege applies, it is a qualified privilege which the United States can readily overcome.

Executive privilege may in some circumstances provide varying protection for Executive branch communications, including those reflecting state secrets, Presidential communications, and the deliberative processes of Executive branch officials. See M. Larkin, Federal Testimonial Privileges § 5.01, at 5-2 (1996). The Presidential communications prong of the Executive privilege is implicit in Article II of the Constitution, and the deliberative process prong has its roots in the common law.[7]

However, privileges are an "exception[] to the demand for

[7] United States v. Nixon holds that the Executive privilege for Presidential communications is qualified, not absolute, and turns on the nature of the documents and the nature of the proceeding. For documents reflecting state secrets, the privilege is virtually absolute in all proceedings--whether congressional, civil, or criminal. For non-state-secret documents, the result turns on the nature of the proceeding. That is, there must be a balancing of needs. 418 U.S. 683, 703-13 (1974). Executive privilege, however "cannot prevail over the fundamental demands of due process of law in the fair administration of criminal justice." Id. at 713.

every man's evidence" and they should be neither "lightly created nor expansively construed, for they are in derogation of the search for truth." Nixon, 418 U.S. at 710.

The grand jury has an important function assigned by the Constitution. The grand jury's role is to indict persons who there is probable cause to believe committed crimes, and to protect persons from unwarranted prosecution where probable cause does not exist. United States v. Calandra, 414 U.S. 338, 343 (1974). To accomplish that function, the grand jury must have access to all relevant evidence: "[T]he longstanding principle that 'the public . . . has a right to every man's evidence,' except for those persons protected by a constitutional, common-law, or statutory privilege, is particularly applicable to grand jury proceedings." Branzburg v. Hayes, 408 U.S. 665, 688 (1972) (citations omitted). The grand jury is an arm of the court and its inquiries are judicial proceedings. Levine v. United States, 362 U.S. 610, 617 (1960). The grand jury's "investigative powers are necessarily broad. 'It is a grand inquest . . . the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation.'" Branzburg, 408 U.S. at 688 (quoting Blair v. United States, 250 U.S. 273, 282 (1919)). A grand jury investigation is "not fully carried out until every available clue has been run down and all witnesses examined in every proper

way to find if a crime has been committed." Id. at 701 (citation omitted). For that reason, the Supreme Court has said, the grand jury is entitled to a considerably broader range of evidence than either the government or a criminal defendant would be entitled to introduce at trial. United States v. R. Enters., Inc., 498 U.S. 292, 298 (1991). "Nowhere is the public's claim to each person's evidence stronger than in the context of a valid grand jury subpoena." In re Sealed Case, 676 F.2d 793, 806 (D.C. Cir. 1982) (footnote omitted).

The limited case law on the subject of Executive privilege makes one principle crystal clear: the privilege, whether applied to a conversation with the President or to fact gathering in preparation for such a conversation, is intended to promote candid communications by and with a President concerning the execution of his Article II duties--and nothing more. See Nixon, 418 U.S. at 705 (referring to "the nature of the privilege of confidentiality of Presidential communications in the exercise of Art. II powers"); id. at 708 (President and advisers "must be free to explore alternatives in the process of shaping policies and making decisions"); id. at 711 (privilege covers communications "in performance of the President's responsibilities"); In re Sealed Case, 121 F.3d 729, 744 (D.C. Cir. 1997) (privilege can be invoked when subpoenaed documents "reflect presidential decisionmaking and deliberations"); id. at

742 (privilege protects "the confidentiality of conversations that take place in the President's performance of his official duties") (quoting Nixon v. Sirica, 487 F.2d 700, 717 (D.C. Cir. 1973) (en banc)); see also Clinton v. Jones, 117 S. Ct. 1636, 1649 n.39 (1997) ("[s]pecial caution is appropriate if the materials or testimony sought by the court relate to a President's official activities"). Like a President's immunity from particular civil damage suits, Executive privilege is "grounded in 'the nature of the function performed, not the identity of the actor who performed it.'" Jones, 117 S. Ct. at 1644 (quoting Forrester v. White, 484 U.S. 219, 229 (1988)); see Kurland, Watergate and the Constitution 37 (1978) (supposition that Executive privilege attaches to the President, regardless of the substance of the communication, is "entirely without justification"). Executive privilege applies to Executive acts--not to private acts undertaken by the individual who is (in the words of the Supreme Court) "the current occupant of that office." Jones, 117 S. Ct. at 1639.

The subject matter of this investigation, possible crimes concerning Jones v. Clinton, plainly falls outside the President's official duties and thus outside Executive privilege. Indeed, the Supreme Court has already ruled unanimously that Jones v. Clinton can proceed to trial because it charges purely private misconduct. Because the lawsuit itself falls outside the

President's official duties, there can be no serious argument that possible efforts to impede the lawsuit assume a constitutional dimension.

Even if Executive privilege were applicable to private conduct, under Nixon, Mr. Lindsey should be compelled to testify because his testimony is directly relevant to an ongoing grand jury investigation and this evidence, by its very nature, is not available with due diligence elsewhere. See In re Sealed Case, 121 F.3d at 754. Demonstrating the importance of the testimony sought and its unavailability from other sources would require a lengthy submission of the specific questions put to Mr. Lindsey and the context in which to place the information. In the absence of a valid claim of Executive privilege, of course, this showing is not necessary. Because of the frivolity of the assertion of Executive privilege here, the United States has not briefed this issue. However, the United States can readily show that the testimony sought is important and unavailable to the grand jury from other sources, and will provide an exhaustive factual supplement to this motion if requested by the Court.

In conclusion, Executive privilege may apply to communications made or received in a President's official capacity or by senior advisers for the purpose of advising the President regarding official duties, but not to communications regarding the President's purely private acts. And matters

relating to Monica Lewinsky, so far as the record shows, uniformly constitute purely private acts that lie well beyond the scope of Executive privilege. Accordingly, the Court should order the White House witnesses, including Mr. Lindsey, to testify regarding conversations relating to Monica Lewinsky and other private conduct of the President.

## II. MR. LINDSEY'S ASSERTION OF ATTORNEY-CLIENT PRIVILEGE SHOULD ALSO BE REJECTED.

Mr. Lindsey also asserted attorney-client privilege, both "officially and personally," as a bar to his answering many questions before the grand jury.[8] This invocation is also unjustified for several reasons. First, the Constitution, federal statutes, rules, and case law recognize no official or governmental attorney-client privilege. A federal government entity or employee simply may not assert a governmental or official attorney-client privilege in response to a federal grand jury subpoena. Second, Mr. Lindsey is not employed as one of President Clinton's many personal attorneys and, therefore, has no standing to assert an attorney-client privilege on a personal basis. Third, even if a recognizable personal attorney-client privilege existed between Mr. Lindsey and President Clinton, the privilege would be waived as to many of the communications

---

[8] Grand Jury Tr., Feb. 19, 1998, p.5, line 14 through p.6, line 14, p.7, line 5 through p.8, line 24, p.9, line 19 through p.11, line 9, p.13, lines 2-19, p.14, line 1 through p.15, line 8, p.41, line 22 through p.43, line 5, p.49, lines 14-24.

because of the presence of non-privileged persons during the conversations.

To our knowledge, no judicial decision, statute, rule, or agency opinion ever has authorized a department or agency of the United States to assert a governmental attorney-client privilege in response to a federal grand jury subpoena. The absence of such precedent speaks volumes about the extravagant position advanced by the White House through Mr. Lindsey. The only published case on the issue ruled against this White House. See In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910 (8th Cir. 1997).

Congress first enacted the Rules of Evidence in 1975. In doing so, it enacted only one privilege rule, Rule 501. The Rule 501 standard is that privileges are determined by "principles of the common law as they may be interpreted . . . in the light of reason and experience." The Supreme Court has emphasized that "we are disinclined to exercise this authority expansively." University of Pa. v. EEOC, 493 U.S. 182, 189 (1990). "When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving." Jaffee v. Redmond, 116 S. Ct. 1923, 1928 (1996). As a result, "inasmuch as testimonial exclusionary rules and privileges contravene the fundamental principle that the public has the right to every man's evidence,

any such privilege must be strictly construed." University of Pa., 493 U.S. at 189 (citations and quotation marks omitted). The Court thus has recognized a privilege (or application thereof) under Rule 501 only when (1) the privilege is historically rooted in American law (and even then, the Court has not recognized it if a great number of States have departed from the historical rule and the policy reasons supporting the rule no longer are persuasive); or (2) the privilege is accepted in a "vast majority" of States and supported by important public policy reasons.

The initial question, then, under Rule 501 is whether the assertion of governmental attorney-client privilege against a grand jury is historically rooted. The answer is no. See, e.g., 24 C. Wright & K. Graham, Federal Practice and Procedure § 5475 (1986) ("It is far from clear that the common-law attorney-client privilege could be claimed by governments; the caselaw is skimpy.") The White House, through Mr. Lindsey, is asking this Court to be the first court ever to hold that, as a matter of federal common law, the attorney-client privilege allows a federal government employee to refuse to testify to a federal grand jury. The White House takes that position despite its having been rejected by the Eighth Circuit only last year in the context of a grand jury subpoena for White House lawyers' notes. In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910 (8th Cir.

1997).

Not only is this application of the attorney-client privilege not historically rooted, but the States do not uniformly recognize it. To the contrary, although some States have codified a government attorney-client privilege that has been applied in civil proceedings against private parties, we are not aware of any contemporary legislation or case approving the assertion of a governmental attorney-client privilege <u>against a government in a criminal proceeding</u>--much less the degree of State consensus that the Supreme Court has found necessary to recognize a privilege (or application thereof) that is not historically rooted.

To the extent they apply, public policy considerations strongly counsel against recognizing such a privilege. Government employees, like Mr. Lindsey, work for the people of the United States. That fact is of critical importance in terms of his obligations. He is not engaged in the private practice of law when he advises the President of the United States. Indeed, 28 U.S.C. § 535(b) requires that "[a]ny information, allegation, or complaint received in a department or agency of the executive branch of the Government relating to violations of title 18 involving Government officers and employees shall be expeditiously reported to the Attorney General by the head of the department or agency" or to another designated official. This

requirement starkly contradicts Mr. Lindsey's assertion of a government or "official" attorney-client privilege in support of a refusal to provide relevant information to a federal grand jury.

Because the application of a governmental attorney-client privilege is not historically rooted, is not supported by a consensus of States, and is not supported by sound policy reasons, Mr. Lindsey's attempts to hinder the grand jury from learning the information he has regarding matters relevant to its investigation should be rejected.

As stated above, Mr. Lindsey cannot thwart inquiry about his conversations with the President and others relating to Monica Lewinsky by asserting a personal attorney-client privilege either. First, there is no indication that he has authority to and has in fact engaged in a dual employment status as both a government lawyer for the Presidency and a personal lawyer for William J. Clinton.[9] President Clinton has retained the services of at least three large private firms to assist him with his private legal affairs--Williams & Connolly, Skadden, Arps, Slate, Meagher & Flom, and Mayer, Brown & Platt. It strains any

---

[9] The burden of showing the applicability of the attorney-client privilege doctrine is on the party invoking its protections. See FTC v. TRW, Inc., 628 F.2d 207, 213 (D.C. Cir. 1980). Specifically, the invoking party must provide "sufficient facts [to allow the court] to state with reasonable certainty that the privilege applies." Id.

reasonable imagination to conclude that Mr. Lindsey is a necessary addition to that stable of legal talent. Second, conversations that Mr. Lindsey had with others who were not Mr. Clinton's lawyers would not be covered by the attorney-client privilege anyway.[10]

Moreover, even if a personal attorney-client relationship had existed, Mr. Lindsey's assertion of a personal attorney-client privilege would be defeated in many instances because the purported privilege has been waived. In many of the instances about which Mr. Lindsey was asked to testify, he was involved in a conversation in which others were present.[11]

In sum, there is no legitimate basis for Mr. Lindsey's assertions of attorney-client privilege, both "officially and personally," as a bar to answering questions before the grand jury. The United States respectfully submits that this Court should order him to answer the questions.

**III. MR. LINDSEY'S ASSERTION OF THE WORK PRODUCT DOCTRINE IS INAPPLICABLE.**

Finally, Mr. Lindsey asserted, in addition to claims of Executive and attorney-client privilege, that revealing the

---

[10] See, e.g., Grand Jury Tr., Feb. 19, 1998, p.14, line 1 through p.15, line 8 (Erskine Bowles), p.49, lines 9-24 (grand jury witness Stephen Goodin).

[11] See, e.g., Grand Jury Tr., Feb. 19, 1998, p.5, line 14 through p.6, line 14 (Cheryl Mills, Chuck Ruff, Mrs. Clinton, Pres. Clinton), p.7, line 15 through p.8, line 24 (Chuck Ruff, Neil Eggleston, Lanny Breuer, Cheryl Mills, Pres. Clinton).

substance of many of his conversations with others about Monica Lewinsky would run afoul of the work product doctrine.[12] Like his other claims, this obstructive argument should be rejected.

Technically speaking, the work product protection is not a privilege, see Fed. R. Civ. P. 26(b)(3); Hickman v. Taylor, 329 U.S. 495 (1947), but is a qualified protection afforded by rule in civil proceedings to protect the functioning of the adversary process. It protects work an attorney does in preparing for litigation, and encompasses interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and tangible items. And while this protection does apply to grand jury proceedings, it can be overcome depending on the nature of the information sought and the need of the requesting party.

A basic requirement of the work product doctrine is that it applies to documents created by and certain statements made by an attorney in anticipation of litigation, not to all documents and conversations reflecting attorney-client communications. Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. RTC, 5 F.3d 1508, 1515 (D.C. Cir. 1993). Here, Mr. Lindsey's client, the White House or the Office of the President, is not capable of becoming a criminal defendant or a party to any related litigation.

---

[12] Grand Jury Tr., Feb. 19, 1998, p.5, line 14 through p.6, line 14, p.7, line 5 through p.8, line 24, p.9, line 19 through p.11, line 9, p.13, lines 2-19, p.14, line 1 through p.15, line 8, p.41, line 22 through p.43, line 5.

Therefore, Mr. Lindsey's work simply was not performed in anticipation of litigation in which his client might be a party. See In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 924 (8th Cir. 1997) (rejecting common interest argument and concluding that White House lawyers could not act in anticipation of litigation).

For the same reasons given in the discussion of Mr. Lindsey's claim to a personal attorney-client privilege, he cannot claim a personal work product privilege. There is no indication that he has the authority to and has in fact been engaged in a dual employment as both a government lawyer and a personal employee of William J. Clinton or of one of the three law firms representing him. Absent such a relationship, Mr. Lindsey cannot claim that he was preparing materials in anticipation of the President's personal litigation.

Mr. Lindsey's assertions of work product protection as a basis for refusing to answer questions before the grand jury were patently invalid. He should be compelled to testify.

**IV. CONCLUSION**

Mr. Lindsey's assertions of Executive privilege, attorney-client privilege (both officially and personally), and work product protection (both officially and personally) were improper. He should be ordered to return to the grand jury and to respond to questions relating to conversations with the

President and others about Monica Lewinsky and subornation of perjury, obstruction of justice, and intimidation of witnesses concerning Jones v. Clinton.

Respectfully submitted,

KENNETH W. STARR
INDEPENDENT COUNSEL

Robert J. Bittman
Deputy Independent Counsel

Stephen Bates
Joseph M. Ditkoff
Rodger A. Heaton
Darrell M. Joseph
Associate Independent Counsel

OFFICE OF THE INDEPENDENT COUNSEL
1001 Pennsylvania Avenue, N.W.
Suite 490-North
Washington, D.C. 20004
(202) 514-8688

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing, Motion to Compel Testimony, was served via fax and Federal Express or hand delivery on this the 6th day of March, 1998 to:

William Murphy
Murphy and Shaffer
100 Light Street
9th Floor
Baltimore, MD 21202

Counsel to Bruce Lindsey

Honorable Charles F. C. Ruff
White House
Washington, D.C. 20500

Counsel to the President

Neil Eggleston
Howrey and Simon
1299 Pennsylvania Avenue, NW
Washington, D.C. 20004

Counsel to the office of the President

David L. Dunleavy
Paralegal Specialist